Your Honor, before I start with my argument, I would like to indicate that I would like to submit some supplemental authorities on the motion for broader COA. You have some new citations? Yes, just one. Just give it to the clerk after the argument, all right? Very well. And she'll distribute it to the panel, as well as a copy to counsel, of course. Very well, Your Honor. Good morning, Your Honors. My name is Scott Engelhard, and I represent Paul Polinkonis. He is the petitioner for writ of habeas corpus and also the appellant in this case. The two issues that are currently before this court have to do with a claim of ineffective assistance of counsel and a second claim of prosecutorial misconduct during closing argument. The first claim of ineffective assistance of counsel, we are alleging that the district court failed to hold an evidentiary hearing despite the clear evidence in support of the ineffective assistance of counsel claim and that the district court erred because the case law in this circuit is clear that de novo review of ineffective assistance of counsel claims is appropriate pursuant to Strickland v. Washington, Chacon v. Wood, Jones v. Wood, and Morris v. Woodford. All of those cases indicate that the district court should conduct de novo review of an ineffective assistance of counsel claim. That doesn't necessarily mean you have to have an evidentiary hearing. That may be, Your Honor, but in this case, the report and recommendation clearly relied upon what happened in State court, where there was also no evidentiary hearing despite some very detailed affidavits or declarations from the expert, Kay Sweeney, from a legal expert who is well recognized in this State, John Strait, and the declaration of trial counsel, Jeff Ellis, agreeing that he had committed error. Now, the law appears, according to Jones v. Wood, that unless the claim is meritless on its face, the district court should conduct de novo review. And an evidentiary hearing, I believe, is appropriate in this case because without that, we haven't had a full fleshing out of what the expert would have said. And that directly relates to the question of prejudice. How would that have helped, counsel? What helped with the expert's opinion on that map and that extra door? What difference would that have made if the shot was two or three feet from the deceased body? Well, Your Honor, first of all, the prosecution argued in closing argument that the victim was lying down when this occurred. And the prosecution admitted that they had virtually no evidence. They had zero evidence, really, of motive. And the question for the jury was the credibility of the defendant who testified that the victim was sitting up in bed and appeared to him to have a hatchet. And so the prosecution argued, because their expert was unrebutted, that the victim was lying down when he was shot. And from that, they had their strongest argument that the defendant should not be believed. So it is absolutely critical evidence in support of the defendant's theory of the case, of a lack of premeditation and a lack of intent, as well as acting in self-defense. And I think the government, at least below, seemed to focus an awful lot on self-defense and ignoring the fact that there are additional issues of premeditation and intent. Regardless of whether or not the jury agreed that there was actual self-defense, there is still a question of premeditation and a question of intent. And there was absolutely no evidence in this case at trial that the defendant bore any ill will whatsoever to this victim. It's a very perplexing case from that standpoint. And there was certainly a lot of discussion by the state of the ghastliness of how things appeared when the police arrived, but ignoring the real lack of evidence as to motive which goes to intent, premeditation, and self-defense. Also, I think what's crucial here is that in addition to not even reviewing the merits of the IAC claim independently, the court, the district court adopted — The district court looked at all the evidence that had been presented. The only thing here that the district court didn't do was conduct an evidentiary hearing. Well, but it's — They always conduct an evidentiary hearing. Respectfully, Your Honor — You're under the anti-terrorism effective death penalty law as well. I appreciate that. And, Your Honor, I respectfully disagree with the suggestion that they reviewed all the evidence and looked — at least to the extent that they looked at it independently. Because the report and recommendation, as well as the order by the district court judge accepting that report and recommendation, simply adopt the Court of Appeals' review of the IAC claim during Mr. Polonconis' personal restraint petition in state court. And one of the crucial errors made there by that Court of Appeals was they made their own credibility determination of Kay Sweeney's credibility, of his expert affidavit. And this happens to be, by the way, the gentleman who ran the Washington State Crime Lab in Seattle for many years. And the Court of Appeals is not in the position to make that credibility determination. Cabana v. Bullock makes clear that it is outside their competence to make that credibility determination. And what the district court did is they rubber-stamped that, at least as it appears. And we have nothing else to go on but the report and recommendation and the order. And it appears that the district court simply rubber-stamped that determination of credibility. And regardless of what interpretation of the Anti-Terrorism and Death Penalty Act we have, and that's still subject to question, it is not reasonable and is contrary to law to adopt that credibility determination by a court of appeals that didn't hear any testimony, didn't have an evidentiary hearing. What the court of appeals in the state court should have done was to remand to their superior court for an evidentiary hearing, just as the district court should have held an evidentiary hearing. Now, if the state court had held, had remanded, had held an evidentiary hearing, and there had been full testimony by Kay Sweeney and any other expert and responsive experts from the state, and then made credibility determinations, we would be in a different situation than we are now. But we're not there, because no one has fully considered and allowed Mr. Polonconis to fully litigate this issue. And this issue is critical to his defense. And the other aspect of the ineffective assistance claim and the evidence of the expert testimony goes directly to this prosecutorial that prior to turning himself in, Mr. Polonconis got a lawyer and then right on the heels of that, the prosecutor suggests that this claim of self-defense is not divine inspiration. It's the very next sentence. And it is a very clear indication that the prosecutor is saying, is implicating the right to counsel and is suggesting that based upon conference with a lawyer, that then Mr. Polonconis has perjured himself by coming up with a false claim of self-defense. Well, that's something the jury might imagine, but to me, like you're stretching it a long way, a little bit unusual for him to deny any involvement for a month, and then for whatever reason, it occurs to him, oh, yeah, it was self-defense. Lawyer, no lawyer. I mean, the importance of this in the letters to the mother and the prosecutor's argument, that sounds like this is the way you trial lawsuits. There's no accusation made. Your Honor, Mr. Polonconis turned himself in a month after, and he went from denial of any knowledge to a full admission that he did it. He turned himself in. It wasn't a question of him being repeatedly interrogated by police, and then he finally breaks down. He turned himself in, and he made this statement. And the government in this situation has again relied upon and taken full advantage of the lack of an expert who would have given the jury reason to believe that the victim, who the defendant had no motive to shoot, was sitting up in bed and had a hatchet. And without that, the prosecutor could take full advantage and claim that this was a preposterous, cooked-up statement of self-defense. And what happened in this case in the state court, Your Honor, is that the question of prosecutorial misconduct was litigated on direct appeal. And then on a personal restraint petition later, the ineffective assistance of counsel claim comes up, and the expert testimony is presented to the court, and there was a request at that time by Mr. Polonconis's attorney that the court reconsider its determination of lack of prejudice, because the court did find that there was error in the argument, but that it was not prejudicial. But the court refused to reconsider, and there has been no reconsideration of this issue in light of the ineffective assistance of counsel claim and the expert testimony that would come with it. What we're asking for here is for this court to remand this case for an evidentiary hearing, and then following that evidentiary hearing, allow full briefing of this question of prejudice. And these two claims are intertwined in that respect, and it is appropriate that the court review both claims together. Unless the Court has any other questions, I'll reserve the rest of my time. That's fine. Thank you. Thank you. May it please the Court. My name is John Sampson. I'm Assistant Attorney General representing the Respondent Appellee. Before I reach the merits, I would like to inform the Court. Late last night, I was reviewing the State's response to the motion for a broader certificate, and I realized there was an error in that response. I will file an amended response in today's mail. The State made the argument regarding procedural bar. That procedural bar argument relates to a claim that is not – that the Petitioner is not seeking to have reviewed by this Court. And in addition, the procedural bar was found by the magistrate judge, but not by the district court judge. So I will correct that in today's mail. That's fine. All right. Moving to the merits, the district court correctly denied habeas relief because the state court decision in this case was not contrary to or an unreasonable application of Supreme Court precedent. In order to obtain relief, Mr. Polokonis must show that the state court decision was objectively unreasonable, and the Supreme Court has recently declared that that means more than clearly erroneous. It's a higher standard than that. So even if this court or the district court were to find a constitutional error in fact occurred, that would still not entitle him to relief. He would have to show that the state court decision is unreasonable. And because he cannot do that, that is why he is not entitled to an evidentiary on his claim of ineffective assistance to counsel. The state court correctly denied both the ineffective claim and the prosecutor misconduct claim because the Petitioner cannot show prejudice. This – in reviewing the evidence presented by the Petitioner, the court found that even if the expert, Mr. Sweeney, testified as he set forth in his declaration, it would not have affected the outcome of the jury's verdict. Because Mr. Sweeney's testimony was that the victim, while naked, while the covers were up to his waist, was rising up in the bed having lied down and was starting to turn when the shots occurred. That does not support a claim of self-defense. That does not show that the defendant or the Petitioner had a reasonable belief of imminent danger of serious bodily injury. He went to the victim's room armed with a handgun. He walked up to the victim. The victim was naked, and he was either lying down or just starting to sit up, and he shot him at close range in the chest. That is not – How far does the record show the door where he said he entered was from where the body was found? The door he claims he entered was nine feet from the victim. The state's experts, who were a forensics scientist – There was no issue about that. There was no issue about that, Your Honor. It was at least nine – it was no more than nine feet, according to his own testimony. And the state's experts, based on the stifling, the gunpowder residue hitting the body and leaving marks on the body, testified that it was within two to three feet. Mr. Sweeney's testimony that he was lying – sitting up after lying down does not support a claim of self-defense. And the state court correctly – they didn't find him not credible. They found his testimony not convincing. They didn't make a credibility determination. They said this opinion would not have mattered, and that's what courts do all the time in determining whether there's prejudice under Strickland. Much of Mr. Sweeney's opinion was not based on forensic evidence. There's no science involved. It's his speculation. He said it wouldn't make sense for a person to walk in and walk around the bed before shooting, as they would have to do if the person was lying down. Well, what happens in murders often doesn't make sense. There's no forensics involved in whether a person would do that or not. That's pure speculation. He also speculated that if he was lying down and somebody shot him at close range, they'd shoot him in the head rather than in the body. Again, that's pure speculation. There's no forensic involved in that. And he also speculated that most people would think that a head shot would be fatal. But as the state court reasonably determined, most people, regardless of what's in movies, know that if you shoot someone in the heart, it's going to be lethal. Finally, Mr. Polokonis's actions after the crime, both before, during, and after the crime are contrary to any claim of self-defense. As I explained, he went to the victim. He shot him as he was either lying or sitting naked in bed. The victim did not have any weapon, no weapon. The hatchet was found in the basement. He didn't have a weapon. Mr. Polokonis admitted he saw, albeit a millisecond or two before he shot, he admitted he saw him in the bed before he shot him. And then he didn't call police. He went and bought cigarettes. And then, although he claimed he was afraid that the victim's family would try to get him or that friends would try to get him, he didn't call the police. He went back and tried to cover up the crime. He stabbed him at least three times in the heart. And the medical examiner who actually went to the scene, as is customary in King County, testified that at first it was difficult to understand what kind of wound this was because it didn't look like a normal gunshot wound because it had been mutilated so much. These are not actions consistent with self-defense. And even if Mr. Sweeney had testified, the jury still would have convicted him. There is no reasonable probability that the jury's verdict would have been different. And he has not shown prejudice. The state court recently denied the claim. Finally, on the claims of prosecutor misconduct, the first allegation is taken of the worst acts in the history of mankind and crimes of war. Mr. Policonis takes that argument completely out of context. There was nothing inappropriate in that. The prosecutor was not saying this was one of the worst acts of mankind. He was trying to explain what premeditation is. And premeditation may be a stupid act, but it's still premeditation. The second, regarding he already had a lawyer, I suggest this claim of self-defense was not a divine inspiration. Even if that was improper argument, there was a curative instruction given. Under Supreme Court case law, when the judge provides a curative instruction to improper argument and the evidence is otherwise strong on the evidence of premeditation and lack of self-defense, there is no prejudice. The state court has reasonably concluded there is no prejudice. Because that conclusion is objectively reasonable and not contrary to Supreme Court case law, Mr. Policonis fails to show he is entitled to relief when the district court properly denied the petition. We would ask that the court affirm the district court. Thank you. All right. Thank you, Mr. Sampson. Rebuttal. Thank you, Your Honors. First of all, the state claims that the state court decision is entitled to full deference, and we strenuously dispute that because the state court decision did not grant a full evidentiary hearing, as is required, and the case law I cited clearly indicates that de novo review is appropriate and a full evidentiary hearing should have been granted by the district court. Also, as to the prosecutorial misconduct claim, again, the state court failed to fully consider this claim, the due process claim that the statement so infected the trial with unfairness as to violate due process of law. The state court failed to consider that argument in light of the ineffective assistance of counsel that was raised in the personal restraint petition. The state, instead, spent a lot of time talking to you about some of the ghastly facts of this case, and I believe trying to suggest that that has some bearing on the issues of the defense, and then they talked at some length about self-defense, suggesting that that was the only issue here, and it's not. There is an issue of premeditation, and there is an issue of intent, and regardless of whether or not there was reasonable force, regardless of whether or not he actually saw what he thought was a hatchet in the victim's hand, there is still a question, given the circumstances that he described, whether or not he had premeditation and whether or not he had intent. And I would ask the court in considering these issues to not consider them until the court has decided on the motion for broader certification of the issues on appeal, because I submit to the court that these issues are all interrelated, that they all have to do with the central question of premeditation, intent, and self-defense. The question of, for example, the search and seizure issue raised in the motion for reconsideration has to do with the letter. The letter is what the government relied on in their closing argument that is the subject of the prosecutorial misconduct argument. And then the testimony of Chad Slayton or the failure to immunize him and the failure to alternatively allow the defense investigator to testify about the statements that he made also go to the question of due process, fairness, and the defendant's ability to corroborate his defense, his claim, that he had fear of the victim, that the fear was reasonable. And he went to this room fearing this person. Mr. Chad Slayton admitted to the court that he had a gun, that he brandished the gun, that Mr. Polonconis was afraid. These are critical facts to corroborate what was otherwise completely uncorroborated testimony of Mr. Polonconis. The government said it was just a credibility question, and they argued in closing that the victim was simply lying down. Well, the expert testimony of Mr. Sweeney would have disputed that, but it wasn't there. The prosecutor argued that Mr. Polonconis consulted with a lawyer and then made up a self-defense claim. Well, without that letter, they don't have that argument. And also, in part, that argument relies upon the lack of Chad Slayton being immunized and required to testify or the defense investigator being able to testify about his inculpatory statements and his corroborating that Mr. Polonconis reasonably feared these individuals. And the prosecutor simply argued that Mr. Polonconis, because he didn't have any of that corroboration, they were allowed to argue that his testimony had to stand on its own. Because it was on its own, because of the lack of corroboration that he would have had if he would have been allowed to present an expert if counsel had not been ineffective in that way and presenting the testimony about Chad Slayton, the victim's cohort in crime, and his threatening behavior after the offense. Therefore, Your Honor, we ask simply that this case be remanded to the district court for an evidentiary hearing and that we then be allowed full briefing. And I would just point out in closing that Mr. Polonconis asked for legal counsel at the district court level. He was denied counsel. He only got counsel once this case was set for, he filed his notice of appeal. So he hasn't had the opportunity to have counsel fully brief these issues and argue these issues. I see I'm out of time. Unless the Court has any questions, I'm done. Thank you. No. All right. Thank you, Mr. Engelhardt. Thank you, Mr. Sampson. This case is submitted for decision.
judges: Reavley , Tashima, Paez